JjARMSTRONG, Judge.
This is a survival and wrongful death action. The plaintiffs appeal from a dismissal. The only two issues on appeal are (1)whether the survival action prescribed and (2) whether the “blood shield statutes,” La. R.S. 9:2797 and La. Civ.Code art. 2322.1, apply to the wrongful death claim. We find (1) that the survival action is not prescribed and (2) that the blood shield statutes do apply to the wrongful death action. Therefore, we will reverse in part, affirm in part, and remand for further proceedings.
The plaintiffs’ decedent, Mr. Ferrand, received a blood transfusion at Charity Hospital New Orleans in April 1977. In May 1977, he developed symptoms of viral hepatitis. The viral hepatitis was caused by the blood transfusion. In 1994, he was diagnosed with liver cancer. Liver cancer is a known complication of viral hepatitis and Mr. Ferrand’s liver cancer was caused by viral hepatitis. The plaintiffs filed the present action, within a year of Mr. Fer-rand’s diagnosis of liver cancer, against the State of Louisiana alleging liability for the blood transfusion at the State’s Charity Hospital.
| ¡.The State filed an exception of prescription as to the survival action. “The survival action comes into existence simultaneously with the existence of the tort and is transmitted to beneficiaries upon the victim’s death and permits recovery only for damages suffered by the victim from the time of injury to the moment of death.” Walls v. American Optical Corp., 98-0455 (La.9/8/99), 740 So.2d 1262, 1273 (quoting Taylor v. Giddens, 618 So.2d 834, 840 (Fla.App.1993)).
The State points out that, in this case, the alleged tort (the blood transfusion) took place in 1977 and suit was filed in 1995. The State, citing Fontenot v. ABC Ins. Co., 95-1707 (La.6/7/96), 674 So.2d 960, and other authorities, also argues that prescription begins to run when a plaintiff knows or should have known that some actionable harm has occurred even if the plaintiff does not realize the full extent of the injury. Additionally, the State points out that Mr. Ferrand’s physician, Dr. Davis Silvers, had told his family, and presumably Mr. Ferrand himself, in 1991 that viral hepatitis such as Mr. Fer-rand had could progress to liver cancer. Thus, the State argues, the one year prescriptive period began running no later than 1991.
However, the uneontroverted testimony of Dr. Silvers was that, of persons with viral hepatitis, only 1 or 2 per 100,000 will develop liver cancer. Because the chances of Mr. Ferrand’s developing liver cancer from his viral hepatitis were so remote, we do not believe that the diagnosis of viral hepatitis, or the knowledge that viral hepatitis could cause liver cancer, was sufficient to start the running of prescription. As we have previously held:
LSA-C.C. art. 3492 provides that delictual actions are subject to a liberative prescription of one year. This prescription commences to prun from the day injury or damage is sustained. Damage is considered, to have been sustained, within the meaning of the article, only when it has manifested itself with sufficient certainty to support accrual of a cause of action. Cole v. Celotex Corporation, 620 So.2d 1154, 1156 (La.1993).
Brumfield v. Avondale Industries, Inc., 95-2260 (La.App. 4 Cir. 5/15/96), 674 So.2d 1159. We do not believe that a 1 or 2 in 100,000 chance of developing liver cancer *6 was “sufficient certainty” to have supported a cause of action for liver cancer. Thus, the fact that Mr. Ferrand had viral hepatitis, knew of his viral hepatitis, and presumably knew that liver cancer was a possible complication of viral hepatitis did not start the running of prescription as to his claim for liver cancer. Instead, prescription began to run on the claim for liver cancer in 1994 when liver cancer was first diagnosed. As suit was filed within one year of the diagnosis of liver cancer, the survival action is not prescribed.
As to the wrongful death action, the plaintiffs argue that the trial court erred by applying the “blood shield statutes,” La. R.S. 9:2797 and La. Civ.Code art. 2322.1, to their wrongful death claims because the blood shield statutes while enacted before Mr. Ferrand’s death, were enacted after the 1977 blood transfusion. The plaintiffs argue that the blood shield statutes should not be construed to apply “retroactively” so as to be applicable to this case. However, each of the blood shield statutes states that its provisions “apply to all alleged causes of action or other acts, omission, or neglect without regard to the date when the alleged cause of action or other act, omission, or neglect occurred.” La. R.S. 9:2797.C and La. Civ. Code art. 2322.1.C. When there is a clear expression of legislative intent as to whether or not a statute applies retroactively, we follow that legislative intent. Walls, 740 So.2d at 1271-72 (citing Cole v. Celotex Corp., 599 So.2d 1058, 1064 (La.1992)). Therefore, blood shield statutes are applicable to this action despite the fact the blood transfusion took place prior to their enactment.[1]
Lastly, the plaintiffs argue that the blood shield statutes do not apply to the State and that Charity Hospital is a State institution. However, blood shield statutes apply generally to “hospitals” and “hospital blood banks” without regard to whether they are public or private institutions. La. R.S. 9:2707.A and La. Civ.Code art. 2322.1. A.
For the foregoing reasons, we reverse the dismissal of the survival action, affirm the dismissal of the wrongful death action and remand for further proceedings.
REVERSED IN PART; AFFIRMED IN PART AND REMANDED.

. The plaintiffs have not raised any issue as to the constitutionality of retroactive application of the blood shield statutes. Therefore, we will not decide that question. However, we do note that the plaintiffs wrongful death causes of action did not arise until after the death of Mr. Ferrand, Walls, 740 So.2d at 1273, which was after the enactment of the blood.shield statutes.